**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Jessica Nicholl,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-25-03360-PHX-KML

**ORDER**

Plaintiff Jessica Nicholl seeks review of the Social Security Commissioner's final decision denying her disability insurance benefits and supplemental security income. Because the Administrative Law Judge's ("ALJ's") decision is supported by substantial evidence and is not based on harmful legal error, it is affirmed.

**I. Background**

Nicholl filed applications for disability insurance benefits and supplemental security income on December 17, 2019, alleging a disability beginning November 30, 2018. (Administrative Record ("AR") 13, 821.) After she was unsuccessful at the agency (*see* AR 1, 13, 27–28), Nicholl appealed to the U.S. District Court for the Northern District of Illinois, which had jurisdiction at the time (AR 921). That court remanded for additional proceedings. On remand, the ALJ held a new hearing and again denied Nicholl's claims. (AR 820–21; 842–43.) That decision became final after Nicholl did not file written exceptions and the Appeals Council did not assume jurisdiction (Doc. 1 at 2). *See* 20 C.F.R.

§§ 404.984(d), 416.1484(d). Nicholl now appeals to this court.

## II. Legal Standard

The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III. Analysis

Nicholl argues the ALJ committed two materially-harmful legal errors in analyzing her claims: (1) improperly evaluating the medical opinions of Kimberly DeVos (Nicholl's treating therapist) and Dr. Richard Cohen (an impartial medical expert); and (2) failing to properly assess certain impairments and account for their limitations in the residual functional capacity ("RFC"). (Doc. 10 at 13, 16, 19–20.) She seeks a remand for further administrative proceedings. (Doc. 10 at 23.)

### A. The ALJ's Five-Step Disability Evaluation Process

Under the Social Security Act, a claimant for disability insurance benefits must establish disability prior to the date last insured. 42 U.S.C. § 423(c); 20 C.F.R. § 404.131. A claimant is disabled under the Act if she cannot engage in substantial gainful activity because of a medically-determinable physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months or more. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Whether a claimant is disabled is determined by a five-step process. *See Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (summarizing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step

three, the claimant must show her impairment or combination of impairments meets or equals the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant meets her burden at step three, she is presumed disabled and the analysis ends. If not, at step four, the claimant must show her RFC—the most she can do with her impairments—precludes her from performing her past work. *Id.* If the claimant meets her burden at step four, then at step five the Commissioner must determine whether the claimant can perform other work that exists in significant numbers in the national economy given the claimant's RFC, age, education, and work experience. *Id.* at § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.*

The ALJ found Nicholl had "not engaged in substantial gainful activity" since her disability onset date and that she had multiple severe impairments for a continuous period of twelve months, satisfying her burden at steps one and two.[1] (AR 824.) *Id.* § 404.1520(a)(4)(i)–(ii). The ALJ determined at step three that Nicholl's impairments or combination of impairments did not meet or medically equal the severity of a listed impairment (AR 825), and at step four that she had the RFC to perform light work with specified limitations (AR 828). In evaluating Nicholl's RFC, the ALJ discounted her symptom testimony as inconsistent with medical and other record evidence. (AR 831.) The ALJ credited Dr. Cohen's medical opinion because she found it supported by and consistent with the record (AR 837–38), but discounted DeVos's opinion as inconsistent with the record (AR 840). The ALJ then used Nicholl's RFC to conclude at step five "there [were] jobs that exist in significant numbers in the national economy that [Nicholl could] perform," so she was not disabled.[2] (AR 841–42.)

**B. The ALJ's Evaluation of Medical Opinions**

Nicholl first contends the ALJ erred in evaluating the medical opinions of DeVos,

---

[1] The ALJ found Nicholl had the following severe impairments: post-traumatic stress disorder, anxiety, opioid use disorder (in remission), attention deficit hyperactivity disorder ("ADHD"), obesity, and personality disorder. (AR 824.) The ALJ also found Nicholl had the following non-severe impairments: migraine headaches, gastroesophageal reflux disease ("GERD"), irritable bowel syndrome ("IBS")/spastic colitis, a hiatal hernia, sleep disorder, and withdrawal seizures from prior opioid use. (AR 824–25.)

[2] The ALJ did not analyze at step four if Nicholl could perform her past relevant work because the ALJ determined she had no past relevant work. (AR 841.)

her therapist, and Dr. Cohen, an independent psychiatric expert. (Doc. 10 at 19, 20.) For claims filed after 2017 like Nicholl's, the most important factors an ALJ considers in evaluating medical opinions are "supportability" and "consistency." *Woods*, 32 F.4th at 791 (citing 20 C.F.R. § 404.1520c(a)). "Supportability" refers to the extent to which a medical source grounds the opinion in an explanation of the relevant objective medical evidence. *Id.* "Consistency" refers to the extent to which the opinion accords with evidence from other medical and nonmedical sources. *Id.* at 791–92. An ALJ must describe how she considered both factors when explaining how persuasive she finds a medical opinion, and her decision must be "supported by substantial evidence." *Id*. at 787, 791.

**1. DeVos's Medical Opinion**

In a letter provided for the first hearing, DeVos opined Nicholl's "health [was] negatively impacted by her mental and emotional symptoms," which manifested physically in "gastrointestinal cramping and other issues" that resulted in an "inability to leave the bathroom" or "maintain concentration, focus, or energy." (AR 406–07.) She also wrote Nicholl had "extreme chronic fatigue" and slept eighteen to twenty hours per day. (AR 406.) She concluded Nicholl was "incapable of finding and retaining employment." (AR 407.) In 2022, DeVos wrote Nicholl's physical symptoms remained "unabated" and again opined Nicholl was "incapable of obtaining and maintaining employment of any sort." (AR 597–98.)

The ALJ discounted DeVos's opinion in part because it was "conclusory" and concerned "issues reserved to the Commissioner." (AR 840.) The determination as to whether a claimant is "able to work" is reserved to the Commissioner and is "neither valuable nor persuasive" to the issue of disability. 20 C.F.R. § 404.1520b(c)(3); *see O'Brien v. Kijakazi*, No. 22-35285, 2023 WL 3735582, at *1 (9th Cir. May 31, 2023). It was therefore proper for the ALJ to discount DeVos's opinion that Nicholl's impairments precluded her from finding and maintaining employment.

The ALJ also found "while [DeVos's] letters cite[d] specific symptomology subjectively supported by [Nicholl]," they were "inconsistent with the medical record."

(AR 840.)[3] The ALJ appears to have focused on the portion of Devos's letters opining Nicholl was unable to maintain focus or energy because of her mental conditions. As the ALJ noted, Nicholl repeatedly told physicians she had no emotional or psychological problems (AR 833, 836 (citing AR 450, 451, 454)); her mental status examinations were normal (AR 835, 836 (citing AR 1214, 1405, 1425)); and during multiple examinations she appeared "awake," "alert," and "oriented" (AR 832 (citing AR 374, 403)). The ALJ also properly discounted Nicholl's claims regarding her gastrointestinal issues. The ALJ cited ample records supporting her non-disability finding (AR 824–25, 828–36), including evaluations of an independent medical expert and two consultative examiners (AR 836–41). As such, any errors on this point did not affect the non-disability determination and do not justify reversing the ALJ's decision. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (holding errors are harmless when "inconsequential to the ultimate nondisability determination") (simplified).

**2. Dr. Cohen's Medical Opinion**

Dr. Cohen opined although Nicholl's impairments did not meet the severity of a listed impairment, she had moderate limitations as to memory, interacting with others, maintaining concentration, and adapting and managing herself. (AR 861–63.) He found Nicholl was "fully functioning [regarding] activities of daily living" and could perform "simple, repetitive tasks" and "low-stress jobs" with "occasional contact" with others. (AR 863, 867.) He did not opine on Nicholl's migraines or fatigue (AR 861, 864), but testified other patients with hypersomnia could "wake up and do their job[s]" under pressure, so hypersomnia "would not result in a marked limitation" (AR 868).

The ALJ found Dr. Cohen's opinion "supported and . . . consistent with the record overall." (AR 838.) To the extent Dr. Cohen's opinion on hypersomnia was based on other patients instead of specific findings about Nicholl herself, it was not properly supported. *Cf. Duarte v. Saul*, No. 2:19-CV-01019 AC, 2020 WL 5257597, at *6–7 (E.D. Cal. Sept. 3, 2020) ("It is undeniable that relying on medical records that do not belong to the claimant

[3] This court need not assess supportability because neither party disputes it. (*See* Doc. 10 at 19–20; Doc. 12 at 11.)

is error”). But because the other aspects of Dr. Cohen’s opinion were sufficiently supported—for example, the consultative examiner observed Nicholl had normal cognitive functioning apart from a “slow response rate”—the ALJ did not err in accepting them. (AR 838 (citing AR 416–21).)

As to consistency, the ALJ cited evidence showing Nicholl was fully oriented; exhibited normal speech and thought processes; had intact memory, abstract thinking, judgment, and insight; and lacked signs of psychomotor agitation. (AR 838.) Nicholl quibbles with Dr. Cohen’s opinion that she did not meet the criteria for depression because she had an “okay mood,” arguing it was both inaccurate and inconsistent with the record. (Doc. 10 at 21.) But Dr. Cohen’s reading of the criteria is at least a rational one, *see* 10 C.F.R. pt. 404, subpt. P, app. 1, § 12.04 (“[Depressive disorder is] characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities . . . .”); medical records did support it (AR 832, 835 (citing AR 394, 1299)); and “[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ’s conclusion that must be upheld.” *Burch*, 400 F.3d at 679. Additionally, the ALJ noted Nicholl’s mental status examinations “[did] not suggest an increase in the severity of [Nicholl’s] symptoms” (AR 836) and “no [s]tate agency psychological consultants concluded that a mental listing [was] medically equaled” either (AR 828). Because an ALJ may find an opinion unpersuasive based on either consistency *or* supportability, *see Allen v. Kijakazi*, No. 22-35056, 2023 WL 2728857, at *1 (9th Cir. Mar. 31, 2023), and substantial evidence underlay the finding that Dr. Cohen’s opinion was consistent with the medical record, any error in evaluating supportability was harmless. The ALJ reasonably credited Dr. Cohen’s medical opinion.

### C. The ALJ’s Evaluation of Nicholl’s Impairments

Nicholl separately argues the ALJ improperly assessed the severity of her fatigue and migraines at step two and failed to account for those impairments—as well as her gastrointestinal symptoms—when making the RFC determination. (Doc. 10 at 13, 14–16.)

In evaluating Nicholl’s RFC, the ALJ found although her impairments “could

reasonably be expected to cause symptoms . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not consistent with" the record. (AR 831.) When a claimant has presented objective medical evidence of an impairment that could reasonably be expected to cause the severity of the symptoms alleged and there is no evidence of malingering, an ALJ may only reject subjective symptom-severity testimony by offering "specific, clear and convincing reasons for doing so." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). Such findings are sufficiently specific when they permit a reviewing court to conclude the ALJ "did not arbitrarily discredit a claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (simplified), *superseded on other grounds by* 20 C.F.R § 404.1502(a). The ALJ did not find Nicholl was malingering, so she could only discredit Nicholl's symptom testimony by providing "specific, clear and convincing" reasons for doing so. *Revels*, 874 F.3d at 655.

**1. Sleep Disorder**

Nicholl testified she slept sixteen to twenty hours per day and could only perform brief tasks before needing extensive rest. (AR 829–31.) She also alleged a fear of doctors related to her anxiety and trauma. (AR 829.) The ALJ discounted Nicholl's claims in part because although Nicholl was "diagnosed with a sleep disorder and a sleep study was ordered," there was "no evidence that [Nicholl] kept her appointment with the recommended sleep specialist." (AR 834.) But the ALJ failed to address two possible explanations: evidence suggesting Nicholl's trauma made it difficult to seek treatment (AR 597, 829), and Nicholl's testimony that she was advised not to obtain a sleep study until her ADHD stabilized (AR 829, 831). This was error.[4] *See Orn*, 495 F.3d at 638 (stating an ALJ must consider possible explanations in the record for failure to seek treatment).

The ALJ next found Nicholl's activities of daily living were "not as limited as would be expected given her reports of disabling symptoms." (AR 836.) Specifically, the ALJ noted Nicholl could invest in stocks, paint, go for walks, stay awake for eight hours, do

[4] Nicholl is correct that this error is "particularly blatant" (Doc. 10 at 13–14), given the Appeals Council on remand specifically identified this flaw in the prior decision (AR 939).

chores, prepare meals, maintain personal hygiene, work out, and train her support animal. (AR 833–36, 838 (citing AR 442, 450, 625, 635, 636, 1163).) Contradictions between a claimant's symptom testimony and her daily activities may provide a valid ground for discounting testimony. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024). But an ALJ "must be especially cautious" in doing so, "because impairments that would unquestionably preclude work . . . will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Here, the ALJ erred by not explaining how the activities cited were inconsistent with Nicholl's claims. And any such inconsistency is not apparent—Nicholl can sleep for most of the day and still engage in some activities when awake. *Cf. Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (finding a claimant's activities, "such as grocery shopping, driving a car, or limited walking for exercise, [did] not in any way detract from her credibility as to her overall disability"). The ALJ also improperly used Nicholl's daily activities to discount her symptom testimony without doing a "transferability" and "substantiality" analysis. *See Orn*, 495 F.3d at 639 (holding an ALJ must find a claimant can spend a "substantial part" of their day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting" to use daily activities as grounds for an adverse credibility finding). For these reasons, the ALJ erred in using Nicholl's daily activities to discount her testimony.

These errors are ultimately harmless, however, because the ALJ properly discounted Nicholl's allegations as also "not consistent with the medical evidence." (AR 831.) *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") (simplified). The ALJ noted Nicholl appeared "awake," "alert," and "oriented" during multiple examinations (AR 832 (citing AR 374, 403)) and stated her ADHD medication helped with her fatigue (AR 836 (citing AR 1163)). The ALJ also pointed to a 2022 examination which found no evidence of muscle atrophy (AR 470) and reasoned if Nicholl "were sleeping most of the day as alleged, it would be reasonable to expect muscle atrophy or weakness" (AR 836). This conclusion was

consistent with the consultative examiner's, who found after observing Nicholl's normal muscle tone that she did not require limitations beyond those the ALJ adopted.[5] (AR 836–37 (citing AR 1165); *see* AR 828.) Nicholl contends the ALJ ignored evidence indicating her fatigue was caused by her trauma (Doc. 10 at 18), but the ALJ could ignore that evidence because it derived from DeVos's permissibly-discounted opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding an ALJ need not incorporate evidence from medical opinions she "permissibly discounted"). Because the ALJ provided sufficiently clear and convincing reasons to discount Nicholl's claims of extreme fatigue, this determination is upheld.

**2. Migraines**

Nicholl testified she suffered from migraines since she was twelve, experiencing one every week or so that left her unable to function for a day or two. (AR 831, 834.) Although Nicholl took medication for her migraines since 2022 and acknowledged it helped, she claimed it had not cleared her symptoms. (AR 824, 831.)

The ALJ discounted Nicholl's testimony because she failed to "seek treatment and report her symptoms" prior to 2022, which "strongly support[ed] the conclusion she was not having disabling migraines." (AR 824.) But Nicholl did report her symptoms before 2022. She reported headaches with eye pain to a primary care physician in January 2019 (AR 780), again reported headaches during a neurology visit in June 2019 (AR 400), and obtained an MRI in August 2019 which yielded a differential diagnosis of migraines (AR 398). The ALJ cited this evidence elsewhere in her opinion (AR 832) but omitted it when discrediting Nicholl's testimony based on a purported failure to seek treatment. The ALJ also erred by not considering a possible explanation in the record for Nicholl's limited treatment: Nicholl's claim that she was not approved for migraine medication in the past because of her methadone use (AR 631). *See Orn*, 495 F.3d at 638.

[5] Nicholl argues "[a]n ALJ is not allowed to use [her] own medical judgment in lieu of that of a medical expert." (Doc. 10 at 19 (quoting *Vaughn v. Berryhill*, 242 F. Supp. 3d 998, 1008 (E.D. Cal. 2017)).) But this case is distinct from *Vaughn*, in which the ALJ prioritized his opinion *over* medical opinions in the record. *See* 242 F. Supp. 3d at 1008–09. Here, the ALJ's opinion is consistent with the consultative examiner's findings.

Nevertheless, these errors were harmless because the ALJ properly found Nicholl's testimony was "not consistent with the . . . lack of evidence in the medical record of headaches/migraines interfering with her employment." (AR 825.) As the ALJ noted, Nicholl's migraines appeared under control: Nicholl told clinicians she was doing well on her medication regimen (AR 824, 835 (citing AR 1204, 1422)), and neurology records showed medication "help[ed] control[] the migraines by shortening . . . duration and reducing the pain" (AR 1204). This was a sufficiently clear and convincing reason to discredit Nicholl's claims as to the ongoing severity of her symptoms. *Cf. Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz. 2016) (quoting *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2016)) (stating an ALJ may use improvement from treatment to discount symptom testimony and need not find treatment cured symptoms completely, only "that the pain was controlled, *i.e.*, no longer debilitating") (simplified).

**3. Gastrointestinal Symptoms**

Nicholl testified her IBS/spastic colitis, redundant colon, and GERD caused her to experience nausea, vomiting, extreme heartburn, painful constipation, and diarrhea which led her to "spend[] hours on the toilet." (AR 830.) The ALJ found these claims "not consistent with the medical evidence." (AR 831, 833.)

Nicholl first takes issue with the ALJ's finding that her GERD was "controlled" and therefore not disabling. (Doc. 10 at 15 (quoting AR 825).) The ALJ permissibly relied on medical records indicating Nicholl's heartburn was "stable" with the use of proton pump inhibitors to discount her claims (AR 825 (citing AR 810)). *Cf. Lopez*, 194 F. Supp. 3d at 911. Nicholl also again contends that the ALJ should have accounted for evidence showing her physical symptoms were linked to her mental conditions. (Doc. 10 at 15–16). But again here, the ALJ permissibly discounted that evidence because it came from DeVos's opinion, *see Batson*, 359 F.3d at 1197, and was inconsistent with the record evidence. The ALJ noted gastroenterology examinations found "no identifiable cause to explain [Nicholl's] symptoms" (AR 833 (citing AR 673)), reported she was in no acute distress ("NAD") (AR 833 (citing AR 668)), and yielded multiple negative biopsies (AR 833 (citing AR 679)).

These inconsistencies between the medical evidence and Nicholl's claims are sufficiently clear and convincing reasons to uphold the ALJ's decision. *See Smartt*, 53 F.4th at 498.

## IV. Conclusion

The ALJ's evaluations of DeVos's and Dr. Cohen's medical opinions were supported by substantial evidence and she permissibly discounted Nicholl's testimony for specific, clear, and convincing reasons. Though some of the ALJ's rationales were flawed, those errors were harmless because they did not affect the ultimate non-disability determination. The non-disability determination is therefore affirmed.

**IT IS ORDERED** affirming the decision of the ALJ.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 15th day of September, 2026.

**Honorable Krissa M. Lanham**
**United States District Judge**